HONORABLE RONALD B. LEIGHTON

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Port of Ridgefield, | CASE NO. C14-6024-RBL |
| Plaintiff, | ORDER |
| v. | |
| Union Pacific Railroad Company, | DKT. ##36, 40 |
| Defendant. | |

THIS MATTER is before the Court on Plaintiff Port of Ridgefield's Motion for Summary Judgment [Dkt. #36] and Defendant/Counter-Claimant Union Pacific Railroad Company's Motion for a Stay or for Leave to Amend its Counterclaims [Dkt. #40]. This case concerns liability for environmental contamination at the Lake River Industrial Site in Ridgefield, Washington. The Port and Union Pacific both owned property at the site, and they entered into a couple of agreements detailing their obligations to remediate it. The Port, who has spearheaded the clean-up, sued Union Pacific for contribution under Washington's Model Toxics Control Act (MTCA). Union Pacific counterclaimed, arguing the Port breached their agreements by seeking money it is not owed and by interfering with Union Pacific's efforts to negotiate a consent decree with Washington's Department of Ecology, which would resolve Union Pacific's

liability for the site. After a nearly one-year stay, Union Pacific has yet to finalize a consent decree. It asks the Court for more time or for leave to amend its counterclaims to include the ways it claims the Port interfered with its negotiations. The Port seeks summary judgment on Union Pacific's counterclaims, arguing it only requests relief reserved in their agreements.

Pacific Wood Treating, a tenant of the Port and of Union Pacific, contaminated the Lake River Industrial Site. Its approximately thirty-year operations caused extensive soil and groundwater contamination. When it declared bankruptcy, its orphan share of liability was apportioned to the Port and to Union Pacific. They are potentially-liable parties under MTCA, and have (more or less) worked together to remediate the site for approximately twenty-years. The Port has spent more than $13 million, and Union Pacific has spent less than $2 million.

The Port and Union Pacific entered into a Funding and Participation Agreement for a remediation investigation/feasibility study (RI/FS) of a portion of the site. They agreed to share financial responsibility for the RI/FS. Neither party waived its MTCA contribution claims. The Port agreed, however, to "support and cooperate" with Union Pacific's efforts to negotiate a cash-out consent decree with Ecology, which would resolve Union Pacific's liability for the site and protect it from the Port's contribution claims.

The parties also entered into a Purchase and Sale Agreement. Needing Union Pacific's (cleaned and capped) two-acre property for a rail overpass, the Port threatened to condemn it but requested to buy it. They bought it for the full appraised value. In their Sale Agreement, the parties attempted to define their prospective and continuing liability for the property.

The Port entered into a consent decree with Ecology. The decree requires the Port to continue remediating the former Pacific Wood facility and surrounding area to Ecology's standards. It also protects the Port from others' contributions claims for all matters discussed

1    within the decree. Union Pacific initiated settlement negotiations with Ecology in February 2014,

2    aiming to enter into a consent decree too.

3        The Port alleges it was unaware of these discussions until December 2014, when it

4    promptly sued in state court under MTCA. It brings a contribution claim against Union Pacific,

5    and it asks the Court to declare Union Pacific liable for an equitable portion of all future clean-up

6    costs. Union Pacific removed the case.

7        Union Pacific filed counterclaims, alleging the Port breached the Participation Agreement

8    by (1) bringing its contribution claim "to the extent that the Participation Agreement bars any of

9    the remedial costs the Port seeks" and by (2) interfering with Union Pacific's pursuit of a consent

10    decree. It also alleges the Port breached the Sale Agreement by bringing its contribution and

11    declaratory relief claims "to the extent these claims relate to hazardous substances that existed on

12    the property at the time of closing." Union Pacific seeks a declaratory judgment that it is not

13    liable to the Port under MTCA, because it has already paid its share of the remediation costs, and

14    the Port has yet to do so.

15        The parties jointly asked the Court to stay the case in July 2015. The Court stayed it for

16    six months, so Union Pacific could attempt to finalize its settlement discussions with Ecology,

17    which would affect the Port's contribution claims and likely moot the case. *See* Dkt. #25.

18    Ecology determined in September that Union Pacific's contribution to the site's contamination

19    had been *de minimis*. Ecology and Union Pacific began memorializing their agreement into a

20    consent decree. Delays in the public notice and comment process halted their efforts. The Court

21    extended the stay through April 2016. The Port opposed this second stay.

22        Union Pacific moves to stay the case an additional three months, so it can finalize a

23    consent decree. Alternatively, it requests leave to amend its counterclaims to record the Port's

24

1  alleged interference with the decree process. The Port moves for summary judgment on Union

2  Pacific's counterclaims, arguing it only seeks relief reserved in the parties' agreements.

3                              **I.      DISCUSSION**

4  **A.      Union Pacific's Third Motion to Stay the Case**

5          Union Pacific moves for a stay or for leave to amend its counterclaims [Dkt. #40]. It asks

6  for a three-month extension to finalize the consent decree process. It argues a stay will not

7  disadvantage the Port because it can comment on Union Pacific and Ecology's proposed

8  settlement during the decree's public notice and comment period.

9          The Port opposes an extension. It argues another stay will damage it: the public notice

10 and comment period will not provide it an adequate forum to litigate its contribution claims

11 against Union Pacific, and the decree will foreclose its opportunity to recover from Union Pacific

12 on the MTCA claims it reserved in the Participation Agreement. It also argues Union Pacific and

13 Ecology likely will not complete the process in three months because Ecology will suspend it

14 until Union Pacific and the Port resolve their claims against each other.

15         Union Pacific responds that it will complete the consent decree in the next three months

16 because Ecology indicated it would pursue a consent decree if Union Pacific and the Port could

17 not settle their claims against each other. It argues judicial economy favors a stay because a

18 consent decree would moot the case.

19         When considering whether a stay is appropriate, a court weighs the competing interests

20 that the requested stay would affect, including: (1) the possible damage that might result from

21 granting it; (2) the hardship or inequity that a party may suffer if the suit proceeds; and (3) the

22 "orderly course of justice," measured in the simplifying or complicating of issues, proof, and

23

24

1  questions of law. *See Avco Corp. v. Crews*, 76 F. Supp. 3d 1161, 1164 (W.D. Wash. 2015)

2  (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

3        Even though a consent decree will moot the Port's contribution claims on all matters

4  addressed by Ecology and Union Pacific, *see* RCW 70.105D.040(4)(d), the harm to the Port in

5  staying the case again (for nearly a year total) is greater than the harm to Union Pacific in

6  proceeding. At this time, Union Pacific can concurrently pursue the consent decree process and

7  litigate against the Port. Union Pacific's motion to extend the stay [Dkt. #40] is DENIED.

8  **B.     Union Pacific's Motion for Leave to Amend its Pleadings**

9        Union Pacific requests leave to amend [Dkt. #40] its counterclaims (1) to detail how the

10 Port has interfered with its attempts to settle its liability with Ecology and (2) to add a claim that

11 the Port breached its duty of good faith and fair dealing.

12       The Port asks the Court not to give Union Pacific leave to amend. Presupposing it will

13 win on its summary judgment motion, the Port opposes amendment as futile because "Union

14 Pacific is moving to amend the very counterclaims that the Port is moving to dismiss." It asks the

15 Court to defer ruling on Union Pacific's motion for amendment until it has ruled on the Port's

16 summary judgment motion.

17       Courts should freely give leave to amend pleadings "when justice so requires." Fed. R.

18 Civ. P. 15(a)(2). Applying this rule with "extreme liberality," courts consider five factors when

19 determining whether to grant leave to amend: (1) undue prejudice to the opposing party, (2)

20 repeated failure to cure deficiencies by amendments previously allowed, (3) undue delay, (4) bad

21 faith or dilatory motive by the movant, and (5) futility of amendment. *See Sharkey v. O'Neal*,

22 778 F.3d 767, 774 (9th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also*

23 *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "Resulting

24

1   prejudice to the opposing party" weighs the heaviest. *Howey v. United States*, 481 F.2d 1187,

2   1190 (9th Cir. 1973). But the opposing party must show amendment is unwarranted. *See DCD*

3   *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir.1987); *see also Richardson v. United*

4   *States*, 841 F.2d 993, 999 (9th Cir.1988).

5          The Port has not shown that granting Union Pacific leave to amend for the first time will

6   cause the Port undue prejudice or will needlessly delay the case. (As indicated below in the

7   Court's decision on the Port's summary judgment motion,) amendment is not futile either. Union

8   Pacific's motion for leave to amend [Dkt. #40] is GRANTED. Although, if Union Pacific claims

9   the Port breached the Participation and Sale Agreements by suing to enforce its rights reserved

10  under those Agreements, the Court is inclined to dismiss that claim *sua sponte*.

11  **III.    The Port's Summary Judgment Motion**

12          The Port moves for summary judgment [Dkt. #36] on Union Pacific's counterclaims. It

13  argues (that based on its reading of the Participation and the Sale Agreements,) it does not seek

14  prohibited contribution from Union Pacific; it only seeks what it reserved a right to seek, and so

15  has not breached either agreement. It also argues that it did not breach the Participation

16  Agreement by interfering with the consent decree process or by suing for contribution, because

17  (1) it reserved its MTCA claims, and (2) Union Pacific breached the agreement first by not

18  informing the Port of its negotiations with Ecology.

19          Union Pacific reads the Participation and the Sale Agreements differently from the Port.

20  It argues the Port has not demonstrated that its contribution claims are correctly limited under the

21  Agreements, and the Port's complaint belies its contentions that they are. Union Pacific also

22  argues that because the Port has not demonstrated that it has paid its equitable share of the clean-

23

24

1   up costs, the Court cannot dismiss Union Pacific's claim for a declaration that MTCA bars the

2   Port from recovering contribution.

3          The Port responds that it has undeniably paid more than its equitable share because it has

4   paid five times more out-of-pocket than Union Pacific and has performed nearly all of the

5   remediation work, and the Court, not Ecology, determines the appropriate allocation of

6   contribution allotments.

7          Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

8   file, and any affidavits show that there is no genuine issue as to any material fact and that the

9   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

10  an issue of fact exists, the Court must view all evidence in the light most favorable to the

11  nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v.*

12  *Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194,

13  1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence

14  for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The

15  inquiry is "whether the evidence presents a sufficient disagreement to require submission to a

16  jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

17  The moving party bears the initial burden of showing no evidence exists that supports an element

18  essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once

19  the movant has met this burden, the nonmoving party then must show the existence of a genuine

20  issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the

21  existence of a genuine issue of material fact, "the moving party is entitled to judgment as a

22  matter of law." *Celotex*, 477 U.S. at 323–24.

23

24

1    Interpreting contract provisions "is a question of law only when (1) the interpretation

2    does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be

3    drawn from the extrinsic evidence." *Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 128

4    Wash.2d 656, 674, 911 P.2d 1301 (1996). Summary judgment on a contractual dispute is only

5    appropriate when the contract has only one reasonable meaning when viewed in light of the

6    parties' objective manifestations. *See Go2Net, Inc. v. C I Host, Inc.*, 115 Wash.App. 73, 85, 60

7    P.3d 1245 (2003) (quoting *Hall v. Custom Craft Fixtures, Inc.*, 87 Wash.App. 1, 9, 937 P.2d

8    1143 (1997)).

9    The Agreements are seemingly internally incompatible, and the parties' interpretations of

10   them are incompatible. The Participation Agreement preserves the Port's MTCA claims but also

11   requires the Port to support forfeiting its claims. The Sale Agreement might indemnify Union

12   Pacific from past and future liability on its former property or just from future liability. Union

13   Pacific's counterclaims do not stand alone as affirmative claims; they are the converse of the

14   Port's claims. The Court cannot resolve these competing claims because it cannot rectify the

15   inconsistencies in the Agreements and between the parties on summary judgment. The Port's

16   summary judgment motion [Dkt. #36] is DENIED without prejudice.

17   *//*

18   *//*

19   *//*

20   *//*

21   *//*

22                                              *//*

23

24

1

## II.    CONCLUSION

2      Union Pacific's motion for another stay [Dkt. #40] is DENIED, and its motion for leave

3   to amend its counterclaims [Dkt. #40] is GRANTED. The Port's summary judgment motion

4   [Dkt. #36] is DENIED without prejudice.

5      IT IS SO ORDERED.

6      Dated this 6th day of July, 2016.

7

8

Ronald B. Leighton
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24