UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PORT OF RIDGEFIELD, a Washington corporation,

Plaintiffs,

v.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation

Defendant.

CASE NO. 14-6024 RBL

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before[1] the Court on Defendant Union Pacific's Motion for Summary Judgment on Plaintiff Port of Ridgefield's MTCA contribution claim [Dkt. #98]; and on the Port's motions for partial summary judgment on Union Pacific's MTCA liability as a PLP [Dkt. #75], and on whether MTCA permits it to even potentially recover from Union Pacific Ecology grants it received and spent on remediation [Dkt. #77].

This case involves the Port's efforts to clean up a contaminated industrial site formerly operated by Pacific Wood Treating (PWT), which is now bankrupt. Both the Port and Union Pacific owned property at the site, and each leased property to PWT during its wood-treating

---

[1] The Port's other Summary Judgment Motion seeks dismissal of Union Pacific's counterclaims against it. [Dkt. # 93]. That Motion will be addressed in a separate Order.

operations. The Port has spent $90 million cleaning up the property, mostly through loans, Ecology grants, and other third-party contributions. It sued Union Pacific under MTCA, seeking contribution for those costs. Union Pacific seeks summary judgment, arguing that the Port is not "out of pocket" any money and that it therefore has no contribution claim against it. It also asks the Court to limit its own potential liability to a distinct portion of the site that it owned—known as "Cell 3"—because, it claims, Cell 3's contamination is divisible from the rest of the site.

The Port seeks summary judgment on its claim that Ecology grants it obtained and spent on the remediation are at least potentially recoverable from Union Pacific under MTCA, as part of Union Pacific's equitable share of site remediation costs. It also asks the Court to determine as a matter of law that Union Pacific is a MTCA "potentially liable party" responsible for an equitable share of remediation costs, in an amount to be determined at trial.

## I. BACKGROUND

From 1964 to 1993, PWT operated a pressure wood treating facility at the Lake River Industrial Site located in Ridgefield, Clark County, Washington. PWT's wood treating operations involved chemical solutions containing creosote, pentachlorophenol, and chromated copper arsenate. These chemicals are highly toxic and caused extensive contamination throughout the site.

The site[2] includes four parcels of land that are now designated Cells 1-4, and areas of the adjacent off property neighborhood. The majority of contamination was found in Cell 1 and 2, with some contamination also found in Cell 3.

_____

[2] Ecology divided the site into four "cells" based on components of PWT's former operations. The Port owned land in each cell. Cells 1 and 2 included the treating plant, retorts (cylinders where the wood was treated with preservative), boiler room, a rail spur, and tram tracks. Tram tracks from the retorts extended to the Union Pacific Cell 3 property. Cell 3 included an area for

The 41 acre site includes 24 acres PWT leased from the Port, and two acres it leased from Union Pacific. Union Pacific's parcel was entirely within Cell 3. Union Pacific transported treated wood to and from Cell 3, and other railroad companies also transported treated wood from Cell 3 using Union Pacific's rail spur.

PWT declared bankruptcy in 1993, and the Washington Department of Ecology named the Port a MCTA PLP in 1996. The Port and Ecology coordinated to remediate the site, and have spent 22 years doing so. In 1996, 2001, and 2014, Ecology and the Port entered into agreed orders to investigate and clean up contamination on the Port's property. In 2013, Ecology and the Port entered into a consent decree to clean up other areas of the site and to settle the Port's liability with Ecology. By 2013, the Port had spent over $90 million[3] on site remediation. Of this, Ecology had provided the Port $76,658,302.00 in grants and $4,400,222.00 in loans to cover remediation costs.

Ecology named Union Pacific a PLP in 2013, and Ecology and Union Pacific began negotiating a *de minimis* settlement. Despite Ecology's regulations requiring public comment period for such negotiations, Ecology did not notify the public, or the Port, of the potential *de minimis* settlement. When the Port learned of Union Pacific's efforts, it filed this MTCA contribution claim. Ecology ultimately decided not to enter a *de minimis* consent decree with Union Pacific.

---

storage and shipment of treated poles, a tram track, a rail spur, and a drip through. Cell 4 was used for storage of untreated and treated poles.

[3] The parties dispute how much was spent, and where it came from. The Court's articulation of one version of these numbers is not a ruling on their accuracy.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## III. DISCUSSION

**A. Union Pacific's Motion for Summary Judgment on the Port's Contribution Claim.**

Union Pacific argues that the Port's contribution claim fails as a matter of law because the Port has not spent any of its own money toward its own equitable share of remediation costs.

1    The Port argues that it is entitled to contribution from Union Pacific, in an amount equal

2    to Union Pacific's equitable share of all remediation costs, whether the money the Port spent

3    came from the Port, Ecology grants, loans, or third parties. The Port argues that it worked to

4    obtain Ecology grants to comply with the remediation order, not to benefit Union Pacific, and

5    that only the Port (and not Ecology) can recover those funds from Union Pacific. It argues that

6    barring recovery of grant funds would allow Union Pacific to escape paying its equitable share of

7    the remediation cost.

8    Under MTCA, the owner or operator of a facility at the time of disposal or release of the

9    hazardous substances is liable with respect to that facility. RCW § 70.105D.040. A "facility"

10   includes "any site or area where a hazardous substance, other than a consumer product in

11   consumer use, has been deposited, stored, disposed of, or placed, or otherwise come to be

12   located." RCW 70.105D.020.

13   Because it is often difficult or impossible to allocate responsibility among persons liable

14   for hazardous waste sites and because it is essential that sites be cleaned up well and

15   expeditiously, each PLP is jointly and severally liable. RCW 70.105D.010. Nevertheless, a party

16   who has resolved its liability to the state shall not be liable for claims for contribution regarding

17   matters addressed in the settlement. RCW 70.105D.040.

18   A party liable under MTCA may bring a private right of action, including a claim for

19   contribution, against any other party liable under MTCA, for the recovery of remedial action

20   costs. RCW 70.105D.080. Recovery shall be based on such equitable factors as the court

21   determines are appropriate. *Id; PacifiCorp Envtl. Remediation Co. v. Dep't of Transp.*, 162 Wn.

22   App. 627, 631 (2011).

23

24

Union Pacific cites no authority for its claim that a party seeking contribution has no claim as a matter of law if it received grants to fund a portion of the remediation costs it spent and now seeks to recover from another PLP. Instead, in the cases it cites, the court had already weighed equitable factors and allocated remediation costs—determined each parties' equitable share of those costs—at trial. (*See Friedland v. Indus. Co.*, 566 F.3d 1203 (10th Cir. 2009); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230 (11th Cir. 2012); *Basic Mgmt., Inc. v. United States*, 569 F. Supp. 2d 1106 (D. Nev. 2008)). While these cases provide guidance on the equitable factors in play, they do not stand for the proposition that a contribution claim necessarily fails if the plaintiff has obtained Ecology loans or grants to fund the remediation it stepped up to fund.

*Friedland* held, unremarkably, that "permitting a CERCLA contribution-action plaintiff to recoup more than the response costs he paid out of pocket flies in the face of CERCLA's mandate to apportion those costs equitably among liable parties." 566 F.3d at 1208-09. But *Friedland* also held that prior payments to the contribution plaintiff is an equitable factor *in allocating response costs*. *Id* (emphasis added).

The fact that the Port funded the clean-up largely through Ecology grants (grants which are available only to municipalities, and not to private corporations like Union Pacific) is perhaps one factor among many that may be considered in allocating parties' equitable shares at trial. But concluding as a matter of law that the Port has not overpaid its own equitable share requires the Court to prematurely determine (or simply assume) the Port's—and Union Pacific's—equitable shares.

Union Pacific appears to contend that it should escape paying any share of past remediation costs simply because Washington State taxpayers footed most of the bill, instead of

the Port paying for remediation entirely on its own.[4] This logic ignores many applicable equitable factors, and ignores Union Pacific's equitable share entirely. The Court will determine equitable shares at trial, not on summary judgment.

Furthermore, even if having zero out of pocket costs barred a PLP from seeking contribution under MTCA, the Port's actual out-of-pocket costs—and future costs—are still in dispute. In order to claim the Port has "zero" out-of-pocket costs, Union Pacific speculates that the Port may not ever repay its Ecology loan, and since it has not yet paid, the loan is therefore not an out of pocket cost. There is no authority for the proposition that an outstanding loan is not an out-of-pocket cost under MTCA.

Alternatively, Union Pacific the Court to determine as a matter of law that "Cell 3-related costs are divisible from the rest of the site." Union Pacific claims that it should not be liable for the entire site because Cell 3 is separate and distinct from the rest of the site, and the contamination in Cell 3 was significantly less than contamination found in other cells. The Port reiterates that relative contamination is a factor in determining Union Pacific's equitable share, which must be determined by this Court at trial.

There is nothing in MTCA or the cases construing it supporting the proposition that a PLP's liability is necessarily limited to the boundaries of an individual parcel within a site. Even if contamination level is distinguishable from the rest of the site, quantity and relative toxicity of a hazardous substance is irrelevant to liability; such a consideration is relevant to allocating costs. *Seattle City Light v. Dep't of Transp.*, 98 Wash. App. 165, 175 (1999).

---

[4] Even if Union Pacific could settle directly with Ecology—which would absolve Union Pacific of liability for contribution claims—it is worth noting that Ecology planned to use the funds from Union Pacific's potential settlement for future site remediation costs, not necessarily on Union Pacific's share of the $90 million already spent.

1    Liability as a matter of law is separate from the equitable allocation of costs among liable

2    parties. In other words, in determining whether Union Pacific is potentially liable under MTCA,

3    its relative contamination is irrelevant. Even at trial, MTCA does not require trial courts to

4    apportion contribution costs based on the relative amounts that liable parties contributed to the

5    contamination. *PacifiCorp*, 162 Wash. App. at 667.

6    Union Pacific's argument that a geographical border Ecology established to aid in

7    remediation should establish a limit on Union Pacific's legal liability is unpersuasive. But the

8    fact that Cell 3's contamination is distinguishable from the rest of the site does not create an

9    entirely separate site for purposes of liability under MTCA. And the cells Ecology created for

10   purposes of site clean-up has no effect on the Court's interpretation of MTCA. The Court also

11   notes that Ecology itself named Union Pacific a PLP for the entire site, not just Cell 3.

12   Even if MTCA permitted courts to ignore other equitable factors and limit a party's

13   liability to a distinct geographical area of a site based on relative contamination, the Port has

14   raised a genuine issue as to whether Union Pacific's contamination was, in fact, limited to Cell 3.

15   Union Pacific engaged in other activities, such as transporting treated wood from its rail spur in

16   Cell 3, that may have contributed to contamination in other areas of the site. In fact, viewed in

17   the light most favorable to the Port, the evidence supports the inference that Union Pacific

18   contributed to contamination well outside Cell 3. Union Pacific's relative contamination, which

19   is one of several factors in determining Union Pacific's equitable share, must be determined at

20   trial.

21   Union Pacific's Motion for Summary Judgment on the Port's MTCA contribution claim

22   is **DENIED.**

23

24

## B. The Port's Motion for Partial Summary Judgment on its ability to recover grants and other funds under MTCA

The Port's own partial summary judgment motion [Dkt. # 77] seeks a ruling that is the reverse of the one Union Pacific sought above: it asks the Court to determine as a matter of law that MTCA permits it to recover from another PLP an equitable share the Ecology grants[5] it used to remediate the site. The Port points out that if it cannot recover Union Pacific's equitable share of remedial action costs, then no one can, and by not paying its equitable share, Union Pacific effectively put the burden of its contamination on the public. As the Port argues, this would be a windfall to union Pacific.

Union Pacific argues that permitting the Port to seek contribution for costs that were paid for by third parties would result in the Port recovering more than it actually spent.

The regulations governing Ecology grants specifically address what happens to them when the grantee (necessarily a municipality, not a corporation) later recovers an equitable share from another PLP: funds received by a grantee as part of a contribution claim award shall be used to *reimburse Ecology* for a proportional share of those funds. WAC 173-322-050(5). The existence of such regulations would make no sense if the grants were not subject to recovery in a contribution claim.

It is true that equity will not permit a double recovery or allowing a contribution-action plaintiff to recoup more than the response costs he paid out of pocket. *See Friedland v. TIC-The Indus. Co.*, 586 F.3d 1203, 1206-07 (10th Cir. 2009); *Basic Mgmt., Inc. v. United States*, 569 F. Supp. 2d 1106 (D. Nev. 2008). But reimbursing Ecology for the grants it obtained with

---

[5] The Port also seeks the same ruling with respect to the loans it has obtained. As discussed above, a PLP can seek contribution from another PLP for its equitable share, including loans it used to (over)pay its own equitable share of the remediation.

1  contributions it obtained under MTCA from another PLP which had not yet paid its equitable

2  share alleviates this concern.

3  Union Pacific's claim that MTCA does not permit the Port to recover from it any portion

4  of the Ecology grants it received is incorrect. The Port's claim that such grant funds are

5  recoverable (provided the Court determines that Union Pacific is "light on the pot" for its

6  equitable share of the remediation costs) is correct. The Port's Motion for Summary Judgment

7  [Dkt. # 77] is, to this limited extent, **GRANTED**. The parties' respective "equitable shares," and

8  the amounts they have paid, will be determined at trial.

9  **C.  The Port's Motion for Summary Judgment on Union Pacific's Liabiltiy Under MTCA**

10  Finally, the Port seeks partial summary judgment [Dkt. # 75] on its claim that Union

11  Pacific, a MTCA PLP with respect to the site, is liable as a matter of law for an equitable share

12  of the remediation cost. It argues that there is no dispute of fact that Union Pacific owned land at

13  the site.

14  Union Pacific reiterates that it should only be a PLP for Cell 3, not the entire site, because

15  the contamination in Cell 3 is divisible from the rest of the site.

16  As discussed above, the divisibility of Cell 3 is an equitable factor for trial, not a limit as

17  a matter of law on Union Pacific's liability. The only issue in determining if Union Pacific's

18  liability under MTCA is whether Union Pacific owned property at the site, and it concedes that it

19  did. Union Pacific is a PLP as a matter of law.

20  Accordingly, plaintiff's Motion for Partial Summary Judgment on this limited point is

21  **GRANTED.**

22

23

24

**IV. CONCLUSION**

Union Pacific's Motion for Summary Judgment [Dkt. #98] is **DENIED**.

The Port's Motion for Partial Summary Judgment on Union Pacific's Liability under MTCA [Dkt. #75] is **GRANTED**. The Port's Motion for Partial Summary Judgment on Funds Recoverable [Dkt. #77] is **GRANTED.**

IT IS SO ORDERED.

Dated this 9th day of August, 2018.

Ronald B. Leighton
United States District Judge